United States District Court
For the District of Columbia

Richard Isasi

                Plaintiff

     V.                               Civil Action # 07-2015 (RBW)

Office of the Attorney General, et al

                Defendants

---

Plaintiff's Opposing Motion to Consolidate and to Extend Answer Due Date.

Pursuant to Federal Rule of Civil Procedure 42(a), Defendants hereby move to consolidate this case. Isasi v. Jones. No 06-2222 (RBW).
Plaintiff's pursuant to Federal Rule of Civil Procedure 42(b), Motion in Opposing, Respectfully refer to this court and in support of this Motion.
   Attached Exhibit with Memorandum of Point — Why this court should be ordered at separate trials.

I'm the Plaintiff in this case. The complaint was brought under the Freedom of Information Act. 5 U.S.C. § 552. On or about November 23, 2007. The defendant's counsel filed a Notice of Appearance. The United States Attorney's Office was served with the summons and complaint. Because the present matter was filed pursuant to the Freedom of Information Act. FOIA. The defendant originally had 30 days in which to respond to the complaint. See. 5 U.S.C. § 552(a)(4)(c).

The court has not ruled yet on Defendant's Motions. The defendant has been in default. Failing to answer this complaint by December 14, 2007.
   Plaintiff's Demand for Judgment.

Opposing Argument.

1.   Defendant's counsel move, with the proposed notion for Consolidation, see. Isasi's v. Jones. 06-2222 (RBW) and Civil Action No 07-2015 (RBW).
   Plaintiff opposes this consolidation. Defendants move to merge and will

PREJUDICE THE PLAINTIFF'S ENTIRE ORIGINAL COURSE OF ACTION. EVEN IF THE ITEM WAS OMITTED FROM THE ORIGINAL ACTION. THE RULE APPLICATION BARS RAISING ANY OF THIS ISSUE AGAINST AND BECAUSE OF THE NUMBER OF FEDERAL AGENCIES INVOLVED IN Plaintiff's F.O.I.A. REQUEST AND EXTRADITION PROCEEDING.

THIS COURT SHOULD BE DENIED DEFENDANT'S MOTION FOR CONSOLIDATION. FOR EXAMPLE OF THIS OPPOSITION SEE. EXHIBIT A.

2. PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 42(b). PLAINTIFF PROPOSES SEPARATE TRIALS. AS THE RULE PROVIDES:

THE COURT IN FURTHERANCE OF CONVENIENCE OR TO AVOID PREJUDICE MAY ORDER A SEPARATE TRIAL WHICH WILL BE CONDUCIVE TO EXPEDITION AND ECONOMY AND MAY ORDER A SEPARATE TRIAL OF ANY CLAIM, CROSS-CLAIM, COUNTERCLAIM OR THIRD PARTY CLAIM OR ANY SEPARATE ISSUE OR ANY NUMBER OF CLAIMS OR ISSUES. ALWAYS PRESERVING INVIOLATE THE RIGHT OF TRIAL BY JURY AS DECLARED BY THE SEVENTH AMENDMENT TO THE CONSTITUTION OR AS GIVEN BY A STATUTE OF THE UNITED STATES.

3. Plaintiff's CLAIM PURSUANT F.O.I.A AGAINST THE CRIMINAL DIVISION AND THE OFFICE OF THE ATTORNEY GENERAL. INVOLVED THE SAME BACKGROUND AND VIOLATION OF THE SAME STATUTE. BUT THE CONSOLIDATION SHOULD BE DENIED WHEN THE CLAIM SHOWS A SEPARATE ISSUE THAT INVOLVED SERIOUS CONSTITUTIONAL QUESTION. FOR EXAMPLE SEE: EXHIBIT B.    ATTORNEY GENERAL RENO ADMITTED.

"FROM OUR CONTINUING CONSULTATION OF THE MARTINEZ MATTER, WE ALSO UNDERSTAND THAT YOUR GOVERNMENT MAY HAVE SOME LINGERING RECIPROCAL ASSISTANCE IN SIMILAR CIRCUMSTANCES. IT IS TRUE THAT WE ARE NOT ABLE TO UNDERTAKE AN ABSOLUTE"

4. THE OFFICE OF THE ATTORNEY GENERAL PROVIDED ASSURANCES TO THE MEXICAN GOVERNMENT WITH DETAILED CONSULTATION WITH EACH OF THE EXECUTIVE AUTHORITIES. WHO WILL BE INVOLVED IN Plaintiff's TRANSFER INCLUDING THE NEW YORK GOVERNOR'S OFFICE. THE OFFICE OF THE QUEENS County District Attorney. THE NEW YORK State DEPARTMENT OF CORRECTION, THE U.S. IMMIGRATION AND NATURALIZATION SERVICE AND THE U.S Marshals Service. THIS COURT SHOULD DENY DEFENDANT'S MOTION FOR CONSOLIDATION BECAUSE EACH ONE OF THE EXECUTIVE AUTHORITIES INVOLVED SHOULD BE JOINT AND SEVERAL SEPARATE TRIAL. FEDERAL RULE OF CIVIL PROCEDURE 42(b). FOR THEIR ACTION BEFORE THIS COURT OR BEFORE THE INTERNATIONAL Court OF Justice. WITHOUT MENTIONING THE MEXICAN GOVERNMENT.

5.  Defendants' move for reconsideration of the I.F.P status on the grounds that plaintiff is barred from proceeding I.F.P. in the federal court by the three-strike provision codified at 28 U.S.C. § 1915(g).

    The court agrees with the defendants and orders to vacate plaintiff IFP and allow time for plaintiff to pay the filing fee applicable to civil action. Plaintiff recently paid the filing fee for each independent action.

6.  This court should deny defendant's motion for consolidation because section 1915(g) is not narrowly tailored to serve a compelling governmental purpose, it is substantial infringement of insigent prisoners' fundamental right of access to the courts, and of the constitutional rights at stake in the potential litigation thwarted thereby, amounts to an unconstitutional deprivation of the equal protection of the laws and of the due process of law guaranteed by the fifth amendment. See Romer v. Evans 517 U.S. 620. 116 Sec. 1620. 134 Led. 2nd 855 (1996).

7.  In addition to its infirmity on equal protection grounds, section 1915(g) raises troubling questions concerning the constitutional prohibition against Bills of Attainer and Ex Post Facto Laws, in that it operates as an extrajudicial punishment against an identified group based on their past conduct.
    Assuming the inconsistency, it is sufficient to say that the constitutional prohibition " No state shall ..... pass any Bill of Attainer, Ex Post Facto Law, or Law impairing the obligation of contracts "

8.  This court should be denied defendant's motion for consolidation. Plaintiff's extradition from Mexico was not litigated in any United States District Court. The Supreme Court has interpreted extradition to be a summary and mandatory executive proceeding derived from the Extradition Clause. U.S. Constitution Art IV, Sec. 2. See. 197 U.S. 324. 332.

9.  The implementing statute 18 U.S.C. § 3182, and where adopted, the Uniform Criminal Extradition Act which established extradition guidelines. Also the uniform Criminal Extradition Act requires inter alias, that the demanding state " must substantially charge the fugitive with the commission of a crime, based upon the presumption that the demanding state has probable cause ". No probable cause exists in plaintiff case. See. Exhibit C

10 . Plaintiff came to this country clothed with all the protection which the nature of such "extradition" proceeding and the true construction of the treaty.

"Nor shall any state deprive any person of life, liberty or property without due process of law" U.S. Constitution Amendment XIV.

And this protection has been denied to the plaintiff by the office of the Attorney General.

11    Plaintiff is filing this motion pro se. He knows nothing about conducting legal research and even less about the preparation of legal papers.

Therefore, it is respectfully requested that this and any other pleading that he submitted in this action be given a liberal construction.

Wherefore, upon the fact and the evidence show in this opposing motion, defendant's motion for consolidation must be denied and plaintiff's motion in opposing should be granted, and the relief sought herein should be granted in the interest of justice.

Richard Isasi          Pro se.

Dated February 11, 2008
Wyoming, New York.

United States District Court
For the District of Columbia

Richard Isasi

        Plaintiff

      v.

Office of the Attorney General. et al.

        Defendants.

Civil Action. 07-2015 (RBW)

Trial on: February 29. 2008
Trial at Room _____
Reggie B. Walton.
United States District Court
For the District of Columbia.
333 Constitution Ave. NW.
Washington. D.C. 20001.

## Notice Setting Case For Trial.

The parties are hereby notified that the above-entitled case is set for trial at the trial session beginning on the date indicate above.

The calendar for that session will be called at 10:00 AM. on that date both parties are expected to be present at that time and be prepared to try the case. Your failure to appear may result in dismissal of the case and entry of decision against you.

Your attention is called to the Court's requirement that, if this cannot be settled on a mutually satisfactory basis, the parties before trial must agree in writing to all facts and all documents about which there should be no disagreement. Therefore. the parties should contact each other promptly and cooperate fully so that the necessary steps can be taken to comply with this requirement.

Your failure to cooperate may also result in dismissal of the case and entry of decision against you.

If there are a number of cases to be tried. the Court will fix the time of each trial at the end of the calendar call. The Court makes every effort to suit the convenience of the Petitioner in fixing trial time; but because of conflicting requests received from Petitioner. the final determination of trial time must rest at the Court's discretion.

Clerk of the Court

# CERTIFICATE OF SERVICE

Richard Isasi

                    Plaintiff.

        v.

Office of the Attorney General.

                    Defendants.

Docket No. 07-2015 (RBW)

I, _____Richard Isasi_____, hereby certify under penalty of perjury that on __FEBRUARY__ __11__, __2008__, I served by United States Mail a copy of __Opposing Motion to Consolidate Notice setting case for trial. Default Motion w/ Affirmation and Exhibits__ and __served by The Attica Legal Mail System__ at:

        Clerk's Office

        United States District Court

        For the District of Columbia

    333 Constitution Avenue, NW. Washington. DC. 20001

                        Address

_____R Isasi_____

                        Signature

Exhibit A

U.S. Department of Homeland Security
Office of General Counsel
Washington, DC 20528

OCT 1 5 2007

 **Homeland Security**

Mr. Richard Isasi
Attica Correctional Facility
P.O. Box 149
Attica, NY 1401-0149

RE: DHS07-167

Dear Mr. Isasi:

This is in response to your letter dated June 4, 2007, appealing 06-FOIA-25597 TSN, the May 3, 2007 adverse determination of your Freedom of Information Act/Privacy Act (FOIA/PA) request by U.S. Immigration and Customs Enforcement (ICE). You requested the following records:

- Extradition procedures and required documents, pursuant to Article 10 and 11, of the United States and Mexico treaty. Requesting extradition papers by the State of New York in April 1995.
- Extradition procedures and required documents pursuant to Article 10 and 11 of the United States and Mexico treaty. Requesting extradition papers by the State of New Jersey, in April 1995.
- Extradition decision and surrender by the Mexican Government, pursuant to Article 14 of the United States and Mexico treaty. Documents supporting extradition from Mexico to the United States.
- Copy of warrants and transportation documents, but the U.S. Marshals Service, from Webb Texas to the State of New Jersey. Dated: September 4, 1997.

ICE denied your request in part by withholding portions of records pursuant to PA exemption (j)(2) and FOIA exemptions (b)(2), (b)(6), and (b)(7)(C). We have reviewed the records in question and affirm in full the initial decision. Our analysis follows.

Privacy Act exemption (j)(2) permits the withholding of records compiled for the purpose of a criminal investigation. The requested records fall within this category and are exempt from release under the Privacy Act.

The records you seek are also properly exempt from the FOIA under (b)(2), (b)(6), and (b)(7)(C). We have determined that the records you seek include information which is related solely to the internal personnel roles and practices of an agency and is exempt under (b)(2). The redacted information is material in which the public has no substantial interest and bears no relation to the substantive contents of the records released. *Lesar v. Department of Justice*, 636 F.2d 472, 485-86 (D.C. Cir. 1980).

Information which would tend to identify third parties in the records released to you was redacted pursuant to 5 U.S.C. § 552(b)(6). Exemption 6 permits the government to withhold all identifying information about individuals in "personnel and medical and similar files" when the disclosure of

such information "would constitute a clearly unwarranted invasion of personal privacy." Allowing disclosure of sensitive personal information such as that requested requires balancing the subject's obvious privacy interests against any public interest in revealing how the government operates. Please note that your private need to examine the records does not constitute a public interest, as an analysis of a public interest does not permit attention to the special circumstances of any particular FOIA requester. *See Schiffer v. FBI*, 78 F.3d 1405, 1410-11 (9th Cir. 1996); *Schwarz v. United States Dep't of Justice*, No. 97-1342, slip op. at 1-5 (D.D.C. Mar. 20, 1998), *aff'd per curiam*, 172 F.3d 921 (D.C. Cir.)(unpublished table decision), *cert. denied*, 525 U.S. 1025 (1998), *reh'g denied*, 525 U.S. 1096 (1999). As such, your need for the information is immaterial to any determination of disclosure. *See United States Dep't of Justice v. Reporters' Comm. for Freedom of the Press*, 489 U.S. 749 (1989).

Information which would tend to identify third parties in the records released to you were redacted pursuant to 5 U.S.C. § 552(b)(7)(C). This exemption is in keeping with the traditional recognition of the strong privacy interests inherent law enforcement records – particularly the names and or identities of third parties that appear in records pertaining to another individual. *See, e.g., Fitzgibbon v. C.I.A.*, 911 F.2d 755, 767 (D.C. Cir. 1990); *Dunkelberger v. Department of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990). The use of the term "law enforcement purposes" envisions not only criminal investigations within the scope of the (b)(7) exemptions, but also includes civil investigations and proceedings within that scope. *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982).

This decision is the final action of the Department of Homeland Security concerning your FOIA/PA request. Inasmuch as you consider this to be a denial of your appeal, you may obtain judicial review of this decision pursuant to the provisions of 5 U.S.C. § 552(a)(4)(B) in the United States District Court in the district in which you reside, or in which the agency records are situated, or in the District of Columbia.

Sincerely,

Victoria Newhouse
Attorney-Advisor

Exhibit B



U. S. Department of Justice

*Criminal Division*

---

*Office of the Assistant Attorney General*

*Washington, D.C. 20530*

SEP  5 1996

MEMORANDUM FOR THE ATTORNEY GENERAL

THROUGH THE DEPUTY ATTORNEY GENERAL

FROM:                        John C. Keeney     MARK M RICHARD
                             Acting Assistant   Deputy Assistant Attorney General
                             Attorney General   Criminal Division

SUBJECT:                     Letters to Attorney General Antonio Lozano
                             Gracia and Mexican Foreign Minister Jose
                             Angel Gurria

TIMETABLE:                   As soon as possible.

SYNOPSIS:                    Per your request, attached are letters to
                             Mexican Foreign Minister Gurria and Attorney
                             General Lozano reiterating our urgent need
                             for their immediate assistance in the
                             <u>Martinez</u> case.

RECOMMENDATION:              That you sign the attached letters, and that
                             they be returned to OIA for immediate
                             transmittal.





# Office of the Attorney General
## Washington, D. C. 20530

September 9, 1996

The Honorable Antonio Lozano Gracia
Attorney General of the Republic
Attorney General's Office
Mexico City, Republic of Mexico

Dear Attorney General Lozano:

It is with growing concern that I write this letter to ask once again for your valuable assistance in the Luis Martinez matter. As you are aware, Martinez, a Cuban national, has been found extraditable to the United States to face multiple murder charges in New York, but his surrender has been deferred until he completes his sentence for rape in Mexico. As you are also aware from our prior discussions on this issue, the postponement of Martinez' transfer will almost certainly result in his achievement of impunity for the crimes committed in this country because the only living eyewitness to his activities here will not be available unless his trial can be commenced in New York in the immediate future.

Clearly, the Martinez situation and our request for his temporary transfer for purposes of prosecution and sentencing present novel and difficult challenges for both our governments; but they are challenges that I believe we must address with all possible creativity, flexibility, and aggressiveness. Should we fail in our cooperative efforts in this case, only Luis Martinez will benefit, because our failure, no matter how well-founded in legal principle, will allow him to escape justice based solely on the persistent nature of his violent criminality.

In an effort to facilitate our cooperative efforts to resolve this matter, we submitted a diplomatic note to your government on May 3 of this year providing assurances regarding Martinez' immediate return to Mexico following the proceedings against him in New York. Our assurances were based on detailed consultations with each of the executive authorities who will be involved in the proposed custodial and transfer process, including the New York Governor's Office, the Office of the Queens County District Attorney, the New York State Department of Corrections, the U.S. Immigration and Naturalization Service, and the U.S. Marshals Service. We believe that our assurances should

The Honorable Antonio Lozano Gracia
Page 2

be considered fully sufficient to evidence our commitment to
effecting Martinez' prompt re-transfer to Mexico following his
prosecution and sentencing, and we would urge your government and
the authorities in Veracruz to accept them and recognize the good
faith in which they have been provided.

From our continuing consultations on the Martinez matter, we
also understand that your government may have some lingering
concerns about the ability of the United States to provide
reciprocal assistance in similar circumstances.  It is true that
we are not able to undertake an absolute, written guarantee of
reciprocity in all future cases and that our assurance to your
government on this issue therefore encompasses simply our pledge
to use our best efforts and all available legal mechanisms to
effect the transfer of detained or sentenced individuals to
Mexico when the interests of justice would otherwise be
disserved.  I believe it is important to note, however, that our
past efforts in cases like these have in fact achieved positive
results for Mexico through the transfer of defendants despite the
pendency of a U.S. criminal charge or sentence.

For instance, in the 1995 extradition matter involving
Enrique Fuentes Leon, our prosecuting authorities in Texas agreed
to surrender the defendant to Mexican authorities and defer the
pursuit of pending U.S. criminal charges because the equities of
a return to Mexico were found to outweigh our interest in his
immediate prosecution here.  Even more compelling in terms of our
ability and willingness to reciprocate is another case from 1995,
that of Barbarino DeLeon Compean, in which Oklahoma state
authorities agreed to commute the prisoner's narcotics-related
sentence so that he could be expeditiously extradited to Mexico
on the clearly more serious charges of murder and rape.  Although
neither of these cases is precisely parallel to the Martinez
situation, we believe they clearly demonstrate our flexibility
and commitment to ensuring that defendants can and will be
brought to justice for their most serious criminal conduct, even
if we must suspend our own processes to achieve that result.

Finally, I would also like to point out that the Department
of Justice is in the process of reviewing possible legislation on
the issue of temporary surrender for prosecution.  If and when
such legislation is adopted we will have an even broader basis on
which to effect temporary transfers than is currently available
to us through our case-by-case review and analysis.  The
enactment of legislation on this procedure would also obviate any
need to amend or supplement existing bilateral treaties to
address the matter, thus allowing us to expedite our efforts to
ensure that the law enforcement interests of all affected
countries can be fully and fairly addressed.

The Honorable Antonio Lozano Gracia
Page 3


Over the past years, we have spoken frequently about
increasing our cooperative efforts against crime and working
together to ensure that criminals do not benefit from the
differences between our criminal justice systems and procedures.
The Luis Martinez case gives us a real opportunity to validate
these mutual commitments and to demonstrate the flexibility and
innovation needed to meet our common law enforcement challenges.
I look forward to joining with you in finding a successful and
expeditious resolution to this matter.

                              Sincerely,



                              Janet Reno



## Office of the Attorney General
### Washington, D. C. 20530

December 8, 1995

The Honorable Antonio Lozano
Attorney General of the Republic
Mexico, D.F.

Dear Attorney General Lozano:

I am writing to renew my urgent request for your valuable and necessary assistance in securing the immediate return of Luis Martinez, a/k/a "Richard Isasi," to the United States for the purpose of standing trial. Upon the conclusion of the trial, we would use our best efforts to return him to Mexico to complete his sentence and thereafter have him returned to the United States to serve his New York sentence, assuming he is convicted. I am fully aware that this request raises a number of novel and difficult questions for your office and the Government of Mexico, but I believe the compelling need for Martinez' presence in this country demands that bold and innovative action be undertaken if we are to ensure that justice is done.

As you are aware from our previous discussion on this matter, Martinez, who is a Cuban national, is wanted in the United States to stand trial for his involvement in the brutal murders of six individuals in New York. His extradition on the homicide charges was granted by your Government on August 7, 1995, and his expeditious surrender was highly anticipated by U.S. authorities because of the scheduled trial date for his codefendants in mid-autumn. Subsequent to the entry of the order of extraditability, during the time Martinez was incarcerated pending extradition, as we have been informed, he was charged, convicted, and sentenced to a seven-year prison term for a rape he committed in Mexico after flight from this country. We have been advised that he would be required to serve his Mexican sentence before he could be returned to the United States for prosecution on the murder charges pending against him here. I urge you to review this position for failure to permit Martinez to be brought to the United States for the purpose of standing trial until completion of or later parole from his Mexican sentence will effectively preclude New York's trying him for his vicious crimes.

The Honorable Antonio Lozano
Page 2

As explained by the prosecutors in New York, the only eyewitness to the murders with which Martinez is charged (who was herself shot a number of times during the attack) is unwilling to testify at multiple trials against Martinez and the other defendants, particularly if the expected court proceedings will extend over a period of years. The witness' unwillingness is based not only on her natural reluctance to continue to re-live the horror of her experience, but also on her fear of reprisals from associates of the defendants who have made death threats against her and her family. The witness has indicated to the prosecutors that she will be available for the current proceedings against Martinez' codefendants and that she will participate in the proceedings against Martinez only if commenced immediately. Therefore, if Martinez is not returned from Mexico until his sentence has been completed or at some time when he is paroled, we will not be able to present the pivotal testimony of the only living eyewitness to his vicious criminal activity.

It is because of this urgency in securing Martinez' presence in New York that I am once again seeking your intervention in this matter. Despite the difficulty of the situation, I believe that we must find a solution that will ensure that the interests of justice and the interests of society are fully and fairly served. We simply cannot allow this defendant to escape a compelling prosecution for multiple murders because he willfully continued his pattern of violent criminal behavior after fleeing across the border to Mexico.

In closing, I send you my best regards, and I trust that we will be able to work effectively together on this extremely important matter.

Sincerely,

Janet Reno



**Office of the Attorney General**

**Washington, D. C. 20530**

September 9, 1996

The Honorable Jose Angel Gurria
Secretary of Foreign Relations
Avenida Ricardo Flores Magón No. 1
Tlatelolco Cuahtemoc 06995
Mexico, D.F. Mexico

Dear Mr. Secretary:

It is with growing concern that I write this letter to ask once again for your valuable assistance in the Luis Martinez matter. As you are aware, Martinez, a Cuban national, has been found extraditable to the United States to face multiple murder charges in New York, but his surrender has been deferred until he completes his sentence for rape in Mexico. As you are also aware from our prior discussions on this issue, the postponement of Martinez' transfer will almost certainly result in his achievement of impunity for the crimes committed in this country because the only living eyewitness to his activities here will not be available unless his trial can be commenced in New York in the immediate future.

Clearly, the Martinez situation and our request for his temporary transfer for purposes of prosecution and sentencing present novel and difficult challenges for both our governments; but they are challenges that I believe we must address with all possible creativity, flexibility, and aggressiveness. Should we fail in our cooperative efforts in this case, only Luis Martinez will benefit, because our failure, no matter how well-founded in legal principle, will allow him to escape justice based solely on the persistent nature of his violent criminality.

In an effort to facilitate our cooperative efforts to resolve this matter, we submitted a diplomatic note to your government on May 3 of this year providing assurances regarding Martinez' immediate return to Mexico following the proceedings against him in New York. Our assurances were based on detailed consultations with each of the executive authorities who will be involved in the proposed custodial and transfer process, including the New York Governor's Office, the Office of the Queens County District Attorney, the New York State Department of Corrections, the U.S. Immigration and Naturalization Service, and the U.S. Marshals Service. We believe that our assurances should be considered fully sufficient to evidence our commitment to effecting Martinez' prompt re-transfer to Mexico following his

The Honorable Jose Angel Gurria
Page 2

prosecution and sentencing, and we would urge your government and the authorities in Veracruz to accept them and recognize the good faith in which they have been provided.

From our continuing consultations on the Martinez matter, we also understand that your government may have some lingering concerns about the ability of the United States to provide reciprocal assistance in similar circumstances. It is true that we are not able to undertake an absolute, written guarantee of reciprocity in all future cases and that our assurance to your government on this issue therefore encompasses simply our pledge to use our best efforts and all available legal mechanisms to effect the transfer of detained or sentenced individuals to Mexico when the interests of justice would otherwise be disserved. I believe it is important to note, however, that our past efforts in cases like these have in fact achieved positive results for Mexico through the transfer of defendants despite the pendency of a U.S. criminal charge or sentence.

For instance, in the 1995 extradition matter involving Enrique Fuentes Leon, our prosecuting authorities in Texas agreed to surrender the defendant to Mexican authorities and defer the pursuit of pending U.S. criminal charges because the equities of a return to Mexico were found to outweigh our interest in his immediate prosecution here. Even more compelling in terms of our ability and willingness to reciprocate is another case from 1995, that of Barbarino DeLeon Compean, in which Oklahoma state authorities agreed to commute the prisoner's narcotics-related sentence so that he could be expeditiously extradited to Mexico on the clearly more serious charges of murder and rape. Although neither of these cases is precisely parallel to the Martinez situation, we believe they clearly demonstrate our flexibility and commitment to ensuring that defendants can and will be brought to justice for their most serious criminal conduct, even if we must suspend our own processes to achieve that result.

Finally, I would also like to point out that the Department of Justice is in the process of reviewing possible legislation on the issue of temporary surrender for prosecution. If and when such legislation is adopted we will have an even broader basis on which to effect temporary transfers than is currently available to us through our case-by-case review and analysis. The enactment of legislation on this procedure would also obviate any need to amend or supplement existing bilateral treaties to address the matter, thus allowing us to expedite our efforts to ensure that the law enforcement interests of all affected countries can be fully and fairly addressed.

Over the past years, we have spoken frequently about increasing our cooperative efforts against crime and working together to ensure that criminals do not benefit from the

The Honorable Jose Angel Gurria
Page 3

differences between our criminal justice systems and procedures.
The Luis Martinez case gives us a real opportunity to validate
these mutual commitments and to demonstrate the flexibility and
innovation needed to meet our common law enforcement challenges.
I look forward to joining with you in finding a successful and
expeditious resolution to this matter.

Sincerely,

Janet Reno

Exhibit C



**U. S. Department of Justice**

*Criminal Division*

---

*Office of the Deputy Assistant Attorney General*          *Washington, D.C. 20530*

December 19, 1995

The Honorable Richard A. Brown
District Attorney
Queens County
125-01 Queens Boulevard
Kew Gardens, New York   11415-1568

Dear Mr. Brown:

   This letter is provided in response to your recent letter to
the Attorney General requesting assistance in achieving the
return of Luis Martinez from Mexico to New York for trial.

   I have been aware of this case for several months.  The
Department of Justice has been doing everything possible to have
Luis Martinez returned to New York to stand trial for the
horrifying crime that took place on January 7, 1995.  We have met
and negotiated with representatives of the Mexican Government in
attempts to uncover options which will enable Mexico to
immediately transfer Martinez.  The Attorney General recently
wrote to the Mexican Attorney General to ensure that he was aware
of her personal interest in this matter and asking him to make
all possible efforts to immediately transfer Martinez to you for
trial.

   Department of Justice officials are meeting with their
Mexican counterparts from December 7 through 12 and we will
continue to press for the immediate return of Luis Martinez.

   I am very saddened by the tragic event of the senseless
murder of six people.  I assure you that this Department will
continue to make every effort to bring Luis Martinez to justice.

                         Sincerely,

                         Mark M Richard
                         Deputy Assistant Attorney General

CTS 960001357
Typed 12/11/95
MMR:FFT:MBT:MCH

Records        Richard          CTS File
Chron          Heineman

# DEPARTMENT OF JUSTICE
## EXECUTIVE SECRETARIAT
## CONTROL SHEET

1. **FOLDER No:**        25064
2. **TRACKING ID No:** X95-025883
3. **RESERVED**

4. **DATE OF DOCUMENT:** 11/15/95
5. **DATE RECEIVED:**        11/24/95
6. **DUE DATE:**                   12/08/95

7. **FROM:**        Richard A. Brown
                          District Attorney
                          Queens County
                          Kew Gardens, NY 11415-1568

8. **TO:**        AG

9. **CATEGORY:**   PRIORITY1

10. **SUBJECT:**

Requesting the AG's assistance in bringing about the return of Luis Martinez a/k/a Richard Isasi
from Mexico to New York to stand trial for the brutal murders of two males and
four females on January 7, 1995. Advises that all appropriate extradition papers have
been filed in the Department's Office of Internal Affairs. Details provided in letter.

11. **ACTION/INFORMATION:**

| Referred To: | Date Assigned: | Action: |
|---|---|---|
| CRM | 11/24/95 | For component response.<br>Return control sheet with signed and dated copy of<br>response to Executive Secretariat. |

| Referred To: | Date Assigned: | Information: |
|---|---|---|
| DAG | 11/24/95 | For information. |
| OAG | 11/24/95 | For information. |

Folder 25064, Page 2

OPL                 11/24/95         For information.

**12. RESERVED FOR EXECUTIVE SECRETARIAT USE**

**13. EXECUTIVE SECRETARIAT CONTACT:**   Dorrence Andrews, 616-0074



**DISTRICT ATTORNEY**
**QUEENS COUNTY**
125-01 QUEENS BOULEVARD
KEW GARDENS, NEW YORK 11415-1568
(718) 286-6000

Richard A. Brown
District Attorney

November 15, 1995

Honorable Janet Reno
Attorney General of the United States
Department of Justice
Constitution Avenue and 10th Street, N.W.
Washington, D. C. 20530

Re:   Luis Martinez a/k/a/ Richard Isasi

Dear Attorney General Reno:

I write as District Attorney of the County of Queens in the State of New York to ask for your assistance in bringing about the return of the above individual to New York from Mexico for trial.

On January 7, 1995, one of the most heinous crimes committed during my tenure as District Attorney occurred in the College Point section of Queens County. Two males and four females, including two fifteen year olds and a pregnant eighteen year old were shot and/or stabbed to death. A seventh individual -- an 18 year old woman who is now pregnant -- miraculously survived despite being shot in the head and having her throat slashed.

Two of the individuals responsible for this carnage were promptly arrested and have now been tried and convicted. I anticipate that they will be sentenced on November 27th to consecutive life terms in prison. A third individual, Richard Isasi, was apprehended in Vera Cruz, Mexico on or about February 9, 1995. My office filed all of the appropriate extradition papers in a timely manner with Michael Heinemann of the Department of Justice's Office of Internal Affairs and we have since corresponded with the Director of that office, George Proctor, who has indicated that every effort is being made to return Isasi to the United States to face trial as soon as possible.

While I understand that the Government of Mexico granted Isasi's extradition on August 7, 1995, I have now been informed that his transfer to the United States has been postponed until he serves a seven-year sentence in Mexico for rape. I had not theretofore been told by anyone that Isasi had any such pending rape case in Mexico and we have still not been made aware of any of the circumstances concerning that alleged incident.

In any event, the case against Isasi in Queens County rests almost exclusively on the testimony of the sole surviving victim of this massacre. Because of her severe injuries at

Honorable Janet Reno
November 15, 1995
Page Two


the hands of Isasi and his cohorts, she has experienced continuing medical problems, as well as emotional difficulties. Every day that Isasi's extradition is delayed is detrimental to the State of New York's case. Certainly, the likelihood of convicting Isasi wanes dramatically if his extradition is postponed for years.

In order to avoid a great injustice, I would respectfully ask that you urge the Mexican government in the strongest terms possible to extradite Richard Isasi unconditionally to the United States to face immediate trial for his criminal actions in Queens County.

Thanking you for your attention to this matter and with warm regards, I am

Sincerely yours,

Richard A. Brown
District Attorney

RAB:rc

Via Federal Express